**FILED**

**February 27, 2017**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 8:35 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Regina Beard, | )   Docket No.: 2016-06-1965 |
|       Employee, | ) |
| v. | )   State File Number: 62425-2015 |
| Electrolux Home Products, Inc., | ) |
|       Employer, | )   Judge Kenneth M. Switzer |
| And | ) |
| Agri General Insurance Co., | ) |
|       Carrier. | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

This case came before the undersigned Workers' Compensation Judge on February 22, 2017, on Ms. Beard's Request for Expedited Hearing. The present focus of this case is Ms. Beard's entitlement to temporary disability benefits and additional medical benefits. Electrolux accepted the claim and provided medical benefits. The central legal issue is whether Ms. Beard's current complaints are related to the work injury. For the reasons set forth below, the Court holds she is not likely to prevail at a hearing on the merits and therefore denies her requests at this time.

### History of Claim

Ms. Beard worked at Electrolux as a press operator. On August 9, 2015, Ms. Beard received an electric shock. Electrolux offered a panel, and she treated at NorthCrest in both the emergency room and its clinic. (*See generally* Ex. 2 at 10-32.) E.R. providers diagnosed "electrical shock sensation and paresthesia." Ms. Beard returned for follow-up care a few days later, where clinicians placed her on restrictions, which Electrolux accommodated. At Ms. Beard's next NorthCrest appointment approximately two weeks later, she reported that her symptoms were worsening in her left arm. The provider ordered a CT scan. Ms. Beard underwent a head CT shortly afterward, which results document "no acute intracranial abnormality."

Electrolux offered another panel, from which Ms. Beard chose Dr. Calvin Dyer, an

1

orthopedic surgeon. He treated her several times over the next few months. *Id.* at 33-48. At Ms. Beard's first visit in September, he wrote, "The patient has a history of an electrical shock and symptoms which do not seem to make full sense, but certainly there is a possibility she has some nerve tingling following this electrical injury." Dr. Dyer prescribed opioids and retained her work restrictions. At the next visit, which is only documented by a WorkLink Physician's Report, Dr. Dyer returned Ms. Beard to full duty. On November 20, he placed Ms. Beard at maximum medical improvement and assigned a zero-percent permanent impairment rating. In April 2016, Ms. Beard returned to Dr. Dyer complaining of left-leg pain. He noted on the WorkLink Physician's Report from that visit that it could "not be determined" whether her condition at that time is work-related. *Id.* at 48.

To make that determination, Electrolux offered a panel of neurologists, from which Ms. Beard chose Dr. Steven Graham. At Ms. Beard's sole visit with him, Dr. Graham examined her and performed an EMG/nerve conduction test of her left leg, which results he noted as "normal." He wrote, "Her subjective pain can best be clinically described as somatoform pain, and there is no ongoing cause-and-effect relationship between the alleged work injury, and her ongoing subjective complaints predominantly of pain in the left leg." Dr. Graham agreed Ms. Beard suffered no permanent impairment or restrictions and that she was at maximum medical improvement. *Id.* at 49-52. According to Ms. Beard, Dr. Graham did not review the EMG test results with her, and he told her the pain was "all in [her] head." He wrote that Ms. Beard "can continue treatment with her local physician in regards to use of gabapentin or other methods for her subjective pain."

Following that instruction, Ms. Beard sought further treatment with her primary care provider, nurse practitioner Rhonda Barrineau. She testified Ms. Barrineau referred her to pain management, although Ms. Beard submitted no medical records documenting treatment with the nurse practitioner.

Ms. Beard began unauthorized treatment with Dr. Ramarao Pasupuleti at the Center for Pain Management in August. (*See generally* Ex. 3.) She introduced copies of his treatment notes from three visits. At the first visit, he examined Ms. Beard and reviewed Dr. Graham's EMG testing and notes. Dr. Pasupuleti wrote as the treatment plan:

> The patient was evaluated by a neurologist through her Workers' Comp insurance, who diagnosed her with somatoform pain and I disagree with this evaluation. The consequences and damage from electrical shock have been studied well and are known causes of neuropathic pain. The patient has evidence of motor and sensory deficits in the left lower extremity associated with paresthesia and it may be reasonable at this time to obtain an MRI of the lumbar spine to evaluate for any intraspinal or other causes.

2

*Id.* at 15. He prescribed hydrocodone and gabapentin and ordered an MRI. At the next visit, Dr. Pasupuleti continued Ms. Beard's pain medications and took her off work, in line with Ms. Beard's testimony and contrary to the assertions of Electrolux's counsel at the Expedited Hearing. At a subsequent visit, Dr. Pasupuleti reviewed the MRI results and, according to Ms. Beard, told her it revealed she suffers from arthritis. He continued her opioid prescriptions and placed her on restrictions.

Ms. Beard testified she still experiences disabling pain and that she loved her job at Electrolux. She does not know whether Electrolux still employs her. She filed a petition for benefit determination seeking additional medical and temporary disability benefits, in apparent reliance on Dr. Pasupuleti's treatment notes.[1] Electrolux asserted Ms. Beard's current complaints do not relate to the August 2015 incident; therefore, it need not provide additional treatment, nor is she entitled to temporary disability benefits.

## Findings of Fact and Conclusions of Law

In general, Ms. Beard, as the employee, bears the burden of proof on all prima facie elements of her workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Sept. 29, 2015). At an expedited hearing, Ms. Beard must come forward with sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Applying these general legal principles to the facts of this case, the Court first considers whether a causal link exists between Ms. Beard's current complaints and the work incident. The Workers Compensation Law requires employers to provide injured employees with reasonable and necessary medical care related to a work injury. The law defines "injury" as an "injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment." A work-related injury causes a need for medical treatment if, within a reasonable degree of

---

[1] Ms. Beard introduced into evidence documentation regarding sums she paid for prescriptions. Counsel for Electrolux objected, but the Court overruled and admitted it into evidence. She also provided a memo to the mediation specialist regarding mileage. Electrolux indicated at the hearing it did not have notice of this as an issue. Having reviewed the entire record, the Court agrees that reimbursement for past medical expenses or unreimbursed mileage are issues that are not properly before this Court at this interlocutory stage, as it is not clear these issues were addressed in mediation. Tennessee Code Annotated section 50-6-239(b)(1) provides that this Court may only adjudicate issues certified on the dispute certification notice. However, at the Expedited Hearing, Electrolux's counsel acknowledged a belief that possibly one of the prescribed medications resulted from authorized treatment at NorthCrest. The Court encourages the parties to address disputes regarding liability for past authorized medical expenses or reimbursement for travel relative to authorized treatment between themselves. If no agreement is reached, Ms. Beard may file an amended Petition for Benefit Determination to resolve these issues.

3

medical certainty, it contributed more than fifty percent to the need for treatment. To meet the "reasonable degree of medical certainty" standard requires a physician's opinion that it is more likely than not, considering all possible causes, as opposed to speculation. Further, the opinion of the treating physician selected from a panel is presumed correct on the issue of causation but may be overcome by a preponderance of the evidence. *See* Tenn. Code Ann. §§ 50-6-204(a)(1)(A); 50-6-102(14).

This case at this stage turns largely on the medical proof, which "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Nance v. Randstad*, 2015 TN Wrk. Comp. App. Bd. LEXIS 15, at \*8 (May 27, 2015). Here, Ms. Beard credibly testified she still experiences disabling pain. However, the most recent authorized treating physician, Dr. Graham, unambiguously concluded her present complaints do not relate to the work injury. He characterized her current pain as "somatoform," and, "there is no ongoing cause-and-effect relationship between the alleged work injury, and her ongoing subjective complaints predominantly of pain in the left leg." The Court notes that before Dr. Graham formed these opinions, Dr. Dyer noted it could "not be determined" whether her condition was work-related.

As previously stated, the Workers' Compensation Law requires this Court to presume Dr. Graham's opinion is correct, although Ms. Beard may overcome the presumption by a preponderance of the evidence. On this record, the Court finds she failed to introduce sufficient evidence to do so. Dr. Pasupuleti's notes indicate mere disagreement with Dr. Graham. He mentioned that the issue of pain associated with electrical shock is "well studied." However, he offered no particulars about these studies or their application to Ms. Beard's condition. In sum, at this time, he offered no other information that would lead this Court to hold that his opinion overcomes the presumption of correctness afforded to Dr. Graham's opinion. Therefore, the Court holds that Ms. Beard has not come forward with sufficient evidence from which this Court may find that she is likely to prevail at a hearing on the merits regarding her entitlement to additional medical benefits.

Turning now to her request for temporary disability benefits, to establish entitlement Ms. Beard must show (1) she was totally disabled to work by a compensable injury; (2) a causal connection between the injury and her inability to work; and, (3) the duration of that period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at \*7 (Dec. 11, 2015). Ms. Beard's request fails on the second prong because, as explained above, she failed to establish the causal connection between the injury and her current inability to work. Her request for temporary disability benefits is denied as well.

**IT IS, THEREFORE, ORDERED** as follows:

4

1. Ms. Beard's claim against Electrolux and its workers' compensation carrier for the additional medical and temporary disability benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on April 10, 2017, at 9:00 a.m. Central time. **You must call at 615-532-9552 or 866-943-0025 toll-free to participate in the Hearing.** You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED this the 27th day of February, 2017.**

**Judge Kenneth M. Switzer**
**Court of Workers' Compensation Claims**

**APPENDIX**

EVIDENCE:
1. Ms. Beard's affidavit
2. Compilation medical records: NorthCrest, Dr. Dyer, Dr. Graham
3. Medical records: Dr. Pasupuleti
4. First Report of Injury
5. C-42 Choice of Physician-NorthCrest
6. C-42 Choice of Physician-Dr. Dyer
7. Wage statement
8. C-42 Choice of Physician-Dr. Graham
9. Prescription profile

TECHNICAL RECORD:
1. Petition for Benefit Determination
2. Employer's Position Statement
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Employer's Witness and Exhibit List
6. Employer's Response to Employee's Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Regina Beard, Employee | x | | | 525 Railroad St., Allensville KY 42204 |
| Lauren Disspayne, Employer's Counsel | | | x | ldisspayne@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

6